UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN A. GABLE and            )
WENDY L. GABLE,              )
            Plaintiffs       )
                             )
            v.               ) C.A. No. 10-cv-30222-MAP
                             )
BORGES CONSTRUCTION, INC.,   )
TOWN OF CHESHIRE, and        )
BRIAN TENCZAR,               )
            Defendants       )

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS AND
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
(Dkt. Nos. 10, 12, 15 & 27)

June 17, 2011

PONSOR, D.J.

## I.  INTRODUCTION

In September 2010, Plaintiffs filed this eight-count complaint in Berkshire Superior Court. Based on dubious allegations of federal constitutional violations arising out of a land dispute between neighbors, Plaintiffs found themselves several months later in this federal court, where Defendants had removed the case. For the reasons stated below, the court finds Plaintiffs' federal claims to be without merit and will accordingly dismiss their entire

complaint, partly with prejudice and partly without.  In so doing, the court will take the opportunity to winnow out certain of the state claims that have no sound basis, in order to narrow the issues for the case's possible return, in part, to state court.

Before delving into the substance of Plaintiffs' claims, the court will first address the odd posture in which Plaintiffs have placed Brian Tenczar.  The heading of Plaintiffs' complaint reads as follows: "John A. Gable and Wendy A. Gable, Plaintiffs, vs. Borges Construction, Inc. and Town of Cheshire, Defendants, vs. Brian Tenczar, Indispensable/Interested party."  (Dkt. No. 1, Ex. 1, Am. Compl.)  The familiar set-up of "party v. party v. party" led the court to assume, at first, that Mr. Tenczar was a Third-Party Defendant.  Later, it became clear in the submitted memoranda that Mr. Tenczar was, in fact, being treated as a defendant.[1]  The court has reconfigured the heading and will, in this memorandum, refer to Mr. Tenczar

_____

[1] At the hearing, Plaintiffs' counsel explained that she created the unprecedented "Indispensable/Interested party" nomenclature because Plaintiffs' prior action against Mr. Tenczar was discharged when Mr. Tenczar filed for bankruptcy.

by his proper title, namely Defendant.

Plaintiffs allege the following against all three Defendants: violations of various state laws and town bylaws (Count I); nuisance (Count II); trespass (Count III); negligence (Count IV); violation of Mass. Gen. Laws, ch. 12, § 11I, the Massachusetts Civil Rights Act (Count V); and violation of 42 U.S.C. § 1983 (Count VI). Against Defendant Borges Construction ("Defendant Borges") and Defendant Town of Cheshire ("Defendant Town"), Plaintiffs allege intentional infliction of emotional distress (Count VII). Against Defendant Town, Plaintiffs generally allege a deprivation of federal constitutional rights (Count VIII). Also within Count VIII are requests for injunctive relief against all Defendants.

Defendant Brian Tenczar ("Defendant Tenczar") has moved to dismiss all claims against him (Dkt. No. 10). Defendant Borges has moved to dismiss Counts V, VI, and VII (Dkt. No. 12). Defendant Town has moved to dismiss all claims against it (Dkt. No. 15). For the reasons that follow, the court will dismiss with prejudice all counts against Defendant Tenczar; Counts V, VI, and VII against Defendant Borges; and Counts V, VI, VII, and part of VIII against Defendant Town.

The surviving counts will be dismissed without prejudice to their re-filing in state court, if Plaintiffs wish to continue pursuing this litigation. Finally, the court will deny Plaintiffs' motion for a temporary restraining order (Dkt. No. 27).

## II.  FACTS

The following facts are taken from the complaint and its attached exhibits and, for the purposes of this memorandum, are assumed to be true.  See Tasker v. DHL Ret. Sav. Plan, 621 F.3d 34, 38 (1st Cir. 2010) ("We accept as true all well-pleaded facts set out in the complaint and draw all reasonable inferences from them in favor of the pleader.").

Plaintiffs live at 1375 Wells Road in Cheshire, Massachusetts.  On August 30, 2006, the Town of Cheshire Zoning Board granted Plaintiffs' neighbors, Ronald and Mary Ann Tenczar, a variance that enabled them to split their abutting parcel at 1343 Wells Road into two parcels.  (Dkt. No. 1, Ex. 1, Am. Compl. ¶ 6.)  On July 23, 2007, Ronald and Mary Ann Tenczar conveyed one of these two parcels to their son, Defendant Brian Tenczar.  Defendant Tenczar's parcel abuts Plaintiffs' property.

A stream runs across both Plaintiffs' and Defendant

Tenczar's properties.[2]  On May 25, 2007, Ronald Tenczar, who is not a named Defendant, allegedly entered Plaintiffs' property and, apparently with some sort of machinery, redirected the stream, resulting in a change of the flow of water toward Plaintiffs' home.[3]  Two months later, in July, the month in which the variance was granted, Plaintiffs' basement flooded.  (Id.)  On August 9, Plaintiffs complained to the Select Board of Defendant Town and Carol Francesconi, the chair of the Cheshire Conservation Commission ("CCC"), that the Tenczars were "raising their land with illegal fill and redirecting the water" onto Plaintiffs' property.  (Id. ¶ 9.)  Plaintiffs also alerted Francesconi that the Tenczar property was a wetland.  (Id.)  Francesconi informed Plaintiffs that the Select Board would issue a cease-and-desist order to Defendant Tenczar the following day.  (Id.)  Instead, on August 10, the CCC visited Defendant Tenczar's property and did not issue the order.  (Id. ¶ 10.)

Plaintiffs contacted the Massachusetts Department of Environmental Protection ("DEP"), which arranged to conduct

_____

[2] Plaintiffs refer to this stream as a "jurisdictional stream," which the court understands to mean that its surface waters are connected to a water of the United States.

[3] This description of events is the court's interpretation of Plaintiffs' allegation that Ronald Tenczar "trespassed onto the Gable property and rolled the stream within the municipal culvert to redirect the water flow towards the Gable home with a construction roller."  (Id. ¶ 8.)

a site visit on September 4, 2007. At the visit, DEP
Inspector Mark Stinson, Defendant Town's Administrator, and
Defendant Town's Department of Public Works ("DPW")
Supervisor observed pieces of asphalt, some of which were
four-to-five feet in length, on Defendant Tenczar's
property. (Id. ¶ 17.) During the site visit, a truck
belonging to Defendant Borges arrived with a load of fill.
Upon seeing the inspectors at the site, the driver of the
truck made a phone call and then left without dumping the
contents the truck. (Id. ¶ 18.) At the inspection, DEP
Inspector Stinson recommended that Defendant Town issue an
emergency cease-and-desist order to ensure that Plaintiffs'
property would not be flooded during any heavy rains. (Id.
¶ 20.) The Town issued the order and issued a follow-up
order requiring Defendant Tenczar to remove the asphalt from
his property. (Id. ¶ 25.) On November 3, 2007, a member of
the Board of Health of Defendant Town inspected Defendant
Tenczar's property and sent him a letter stating that he had
determined that "all blacktop was removed," presumably
referring to the asphalt. (Id. ¶ 27; Dkt. No. 32, Ex. 9.)

In March 2008, Plaintiffs' basement "for the first time
in twenty years, flooded several times after Tenczar dumped

-6-

the illegal fill and topsoil damming up the stream."[4]  (Dkt.
No. 1, Ex. 1, Am. Compl. ¶ 30.)  At this time, Plaintiffs
filed a lawsuit in Berkshire Superior Court against
Defendant Tenczar seeking a preliminary injunction and
charging him with trespass, negligence, and nuisance.
Defendant Tenczar filed for bankruptcy, and the suit was
discharged, with no objection by Plaintiffs, on January 11,
2010.  (Id. ¶ 70.)

In July 2008, Defendant Tenczar presented a Notice of
Intent and Request for Determination of Applicability
("RDA") to Defendant Town, proposing to build a single
family home on his parcel.  Defendant Town held a public
hearing at which Plaintiffs voiced their concerns, and on
November 6, Defendant Tenczar's request was denied.  (Id. ¶
47; Manually filed Ex. B2.)

On December 17, 2008, Plaintiffs emailed Francesconi to
inform her that the asphalt had not been entirely removed
from Defendant Tenczar's property.  The complaint alleges
that the issue raised by this email has never been properly
addressed and that as of March 30, 2010, "'oil'/solid waste"
still remained on the Tenczar property.  (Dkt. No. 1, Ex. 1,

---

[4] Although puzzling, the inconsistency between this
statement and Plaintiffs' allegation that their basement
flooded in July 2007 is of no moment at this stage of the
litigation.

Am. Compl. ¶¶ 26, 53.)

On July 14, 2009, Defendant Tenczar filed a new RDA
with Defendant Town seeking permission to conduct four
separate activities on his property.  Plaintiffs objected to
one of these having to do with "the use of mechanized
equipment to mow a portion of the parcel."  (Manually filed
Ex. B3.)  Initially DEP allowed this particular request.
Plaintiffs continued to object but were told by the Cheshire
Conservation Commission that it had no jurisdiction to
overturn DEP's decision.  (Dkt. No. 1, Ex. 1, Am. Compl. ¶
50.)  Eventually, on October 7, 2009, based on Plaintiffs'
application for review of its decision, DEP withdrew its
approval of Defendant Tenczar's request to mow with
mechanized equipment.  (Id.)

On August 4, 2009, the minutes of Defendant Town's
Planning Board Meeting reflect that two hours were spent
discussing "the fill issue at the Brian Tenczar property on
Wells Road."  (Manually Filed, Unnumbered Ex.)  On September
28, 2009, Defendant Town's Planning Board, of whom Defendant
Tenczar's father Ronald Tenczar was a member, informed
Defendant Tenczar that he had failed to apply for the
necessary permits for any change in grade that would impact
water flow.  (Dkt. No. 1, Ex. 1, Am. Compl. ¶ 57.)
Defendant Tenczar and Francesconi attended a hearing

regarding the alleged violation and stated that they did not believe that the property was within a flood plain and thus was not subject to the permitting requirement.  Plaintiffs allege that Defendant Tenczar and Francesconi used an outdated map to support this contention.  The Planning Board has taken no other action on this issue.  (Id. ¶ 58.)

Throughout the winter of 2009-2010, DPW allegedly failed to maintain the culvert that borders Plaintiffs' property but continued to maintain all other culverts on nearby properties.  (Id. ¶ 72.)  DPW has told Plaintiffs that it lacks jurisdiction to maintain the culvert, which, according to Plaintiffs, it has maintained for more than twenty years.  Plaintiffs allege that Defendant Town's failure to maintain the culvert is in retaliation for Plaintiffs' exercising their legal rights.  (Id. ¶ 51.)  On March 11, 2010, Plaintiffs sent a demand letter to Defendant Town.

On August 31, 2010, DEP sent a letter to Defendant Town's Board of Health stating that it had received a complaint from Plaintiffs regarding illegal dumping of fill that included stumps and asphalt on Defendant Tenczar's property.  (Manually Filed Unnumbered Ex.)  Although the letter requested that the Board of Health investigate the matter, it is unclear whether such an investigation

occurred.  One month later, in September 2010, Plaintiffs
filed the current complaint in Berkshire Superior Court.  As
noted, it was thereafter removed to this court.

### III. DISCUSSION

A.  Legal Standard.

To survive a motion to dismiss under Rule 12(b)(6), a
complaint must contain sufficient factual matter to state a
claim for relief that is both actionable as a matter of law
and "'plausible on its face.'"  Ashcroft v. Iqbal, 129 S.
Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  When assessing a
complaint's sufficiency, a court must accept all well-
pleaded facts as true and draw all reasonable inferences in
favor of a plaintiff.  Edes v. Verizon Communs., 417 F.3d
133, 137 (1st Cir. 2005); Fed. R. Civ. P. 12(b)(6).  This
"highly deferential" standard of review "does not mean,
however, that a court must (or should) accept every
allegation made by the complainant, no matter how conclusory
or generalized."  United States v. AVX Corp., 962 F.2d 108,
115 (1st Cir. 1992).  Accord Sanchez v. Pereira-Castillo,
590 F.3d 31, 49 (1st Cir. 2009) (noting that pleadings that
"'are no more than conclusions . . . are not entitled to the
assumption of truth'") (quoting Iqbal, 129 S. Ct. at 1950)).
Ultimately, a complaint must "set forth 'factual

-10-

allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

B. Defendant Tenczar's Motion to Dismiss (Dkt. No. 10).

Defendant Tenczar has moved to dismiss all of the claims against him on the ground that Plaintiffs' action is barred because Plaintiffs' previous claims of trespass, negligence, and nuisance were discharged in his bankruptcy proceeding. In his Bankruptcy Petition, Defendant Tenczar properly listed Plaintiffs as creditors to be discharged, and Plaintiffs indisputably did not object. Plaintiffs counter that they are seeking only equitable relief from Defendant Tenczar in this action and that ongoing pollution is "non-dischargeable."

This riposte is unpersuasive. First, without question, Plaintiffs may not resurrect their previously discharged tort claims against Defendant Tenczar, and thus Counts II, III, and IV must be summarily dismissed with prejudice as against him. See Rederford v. US Airways, Inc., 589 F.3d 30, 36 (1st Cir. 2009) ("Chapter 11 reorganization provides debtors with a fresh start by adjudicating, disallowing, or

discharging all claims arising before the debtor is discharged from bankruptcy.").

Plaintiffs' requests for injunctive relief against Defendant Tenczar require more extended scrutiny. Plaintiffs seek an injunction requiring Defendant Tenczar "to restore the abutting property to the condition prior to the Defendant's disposal of 'oil'/solid waste." (Dkt. No. 1, Ex. 1, Am. Compl. ¶ 120(b).) Defendant Tenczar asserts that such an affirmative order would require him to expend substantial sums on this remediation effort or face contempt of court. Thus, he argues, the relief Plaintiffs seek is not equitable; instead, it is equivalent to a monetary claim dischargeable in bankruptcy. See Rederford, 589 F.3d at 36 (1st Cir. 2009) ("[A] right to an equitable remedy . . . is a 'claim' within the meaning of the Bankruptcy Code, and subject to bankruptcy proceedings, if 'a monetary payment is an alternative for the equitable remedy.'" (quoting Air Line Pilots Ass'n v. Continental Airlines, 125 F.3d 120, 133 (3d Cir. 1997)).

In Ohio v. Kovacs, addressing a similar argument, the Supreme Court held that where "the cleanup order had been converted into an obligation to pay money," the obligation "was dischargeable in bankruptcy." 469 U.S. 274, 283 (1985). Plaintiffs' argument that the order only requires

-12-

Tenczar not to impede removal of the waste and that there is
no requirement that he pay any money was expressly rejected
by the Kovacs Court, which recognized that, unless the
alleged polluter is actually able personally to do the
cleanup, money will have to change hands.  Id. at 282
("'Kovacs cannot personally clean up the waste he wrongfully
released into Ohio waters.  He cannot perform the
affirmative obligations properly imposed upon him by the
State court except by paying money . . . .'" (quoting In re
Kovacs, 717 F.2d 984, 987 (6th Cir. 1983)).

    Of course, Kovacs does not permit a bankrupt polluter
who is still in possession of his property to continue
actively polluting simply because he has declared
bankruptcy.  Significantly, the defendant in Kovacs, unlike
Defendant Tenczar, no longer owned the property at issue.
With regard to this point, the Court stated,

    [W]e do not hold that the injunction against
    bringing further toxic wastes on the premises or
    against any conduct that will contribute to the
    pollution of the site . . . is dischargeable in
    bankruptcy; we here address . . . only the
    affirmative duty to clean up the site and the duty
    to pay money to that end.  Finally, we do not
    question that anyone in possession of the site . .
    . must comply with the environmental laws of the
    State of Ohio.  Plainly, that person or firm may
    not maintain a nuisance, pollute the waters of the
    State, or refuse to remove the source of such
    conditions.  As the case comes to us, however,
    Kovacs has been dispossessed and the State seeks
    to enforce his cleanup obligation by a money

judgment.

<u>Id.</u> at 284-85 (emphasis supplied).

Clearly, the situation would be entirely different if Defendant Tenczar had been charged by the Commonwealth of Massachusetts with an ongoing statutory or regulatory violation and then refused to cease committing the prohibited conduct. Defendant Tenczar remains in possession of the land in question and thus is forbidden, as the <u>Kovacs</u> Court noted, from contaminating the land or polluting the site. A bankruptcy discharge is not a license to pollute. <u>See</u> <u>Cournoyer v. Lincoln</u>, 790 F.2d 971, 977 (1st Cir. 1986) ("[A] debtor in possession under Chapter 11 is not excused because of its bankruptcy from valid and enforceable state and local regulations.").

The complaint, at least in its present form, does not suggest that Defendant Tenczar is continuing to contaminate the property currently -- only that he is not repairing what he has already done. Nor is there any indication that the Commonwealth of Massachusetts or any regulatory body is pursuing him for any such ongoing violation. The complaint, in essence, protests Mr. Tenczar's past action, and this claim was discharged.

For the foregoing reasons the claims against Defendant

-14-

Tenczar will be dismissed with prejudice.  New claims may be offered, of course, in any amended complaint if Defendant Tenczar commits new acts, or in some way impedes remediation of his past acts through efforts that require no payment of money by him.

C.    Defendant Borges's Motion to Dismiss (Dkt. No. 12).

Defendant Borges has moved to dismiss Counts V, VI, and VII for failure to state a claim.

    1.    Count V: Violation of Massachusetts Civil Rights Act.

Defendant Borges contends that Plaintiffs have failed to sufficiently plead a cause of action under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws, ch. 12, § 11I,[5] because there is no allegation of the requisite interference by "threats, intimidation or coercion."  Bally v. Northeastern Univ., 532 N.E. 2d 49, 52-53 (Mass. 1989) (noting that successful cause of action under MCRA requires that "interference or attempted

_____

[5] "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action of injunctive and other appropriate equitable relief . . . ."  Mass. Gen. Laws ch. 12, § 11I.

interference was by 'threats, intimidation or coercion'")
(quoting Mass. Gen. Laws, ch. 12, § 11H)).  Defendant Borges
is correct.

Plaintiffs' allegations relating to Defendant Borges
and the MCRA charge are limited to the following:

> During the September 4th site view and in the
> presence of DEP and town officials a Borges truck
> came to the Tenczar property with another load of
> fill, was seen by the DEP representative, made a
> telephone call, and left without dumping the fill.

(Dkt. No. 1, Ex. 1, Am. Compl. ¶ 18.)  Although Plaintiffs
posit that this allegation is evidence of physical
confrontation, in fact it suggests quite the opposite: an
explicit decision to avoid confrontation.  There is simply
no reading of this allegation that permits a conclusion that
Plaintiffs were intimidated or threatened by Defendant
Borges.  See Bally, 532 N.E.2d at 53 (holding that complaint
must allege either "an individualized threat" or "a threat
of serious harm").

Plaintiffs alternatively argue that Defendant Borges's
economic coercion constituted a violation of their state
civil rights.  See Buster v. George W. Moore, Inc., 83
N.E.2d 399, 403 (Mass. 2003) ("[E]conomic coercion alone may
constitute 'threats, intimidation or coercion.'").  The
allegation relating to this claim is that "BORGES and

TENCZAR'S father executed an agreement regarding 1343 Wells Road and the fill on August 13, 2007." (Dkt. No. 1, Ex. 1, Am. Compl. ¶ 18.) In their memorandum and at the hearing, Plaintiffs attempted to flesh out this allegation by explaining that Defendant Borges sought to indemnify itself from any claims arising out of its creation of "an illegal disposal site abutting the Plaintiffs' property" by signing an agreement with Ronald Tenczar. (Dkt. No. 22, Pl. Mem. in Opp. at 8.) Yet, even drawing all inferences in favor of Plaintiffs, no claim of economic coercion derives, even inferentially, from this allegation. Consequently, Count V will be dismissed with prejudice as against Defendant Borges.

      2.  <u>Count VI: Violation of 42 U.S.C. § 1983</u>.

      In Count VI, Plaintiffs allege that Defendant Borges deprived them of their constitutional right to "hold, own and enjoy property, [and] the right to seek redress from their government, among other constitutional rights." (Dkt. No. 1, Ex. 1, Am. Compl. ¶ 110.) Defendant Borges seeks dismissal of this count on the grounds that Plaintiffs have failed to allege that the company was acting under color of state law. <u>See</u> <u>Redondo Borges v. United States HUD</u>, 421 F.3d 1, 9 (1st Cir. 2005) ("'Section 1983 supplies a private right of action against a person who, under color of state

law, deprives another of rights secured by the Constitution or by federal law.'") (quoting <u>Evans v. Avery</u>, 100 F. 3d 1033, 1036 (1st Cir. 1996)). In support, Defendant Borges observes that the complaint alleges only that the company was hired by a private citizen, Defendant Tenczar, to do work on his private property. (Dkt. No. 1, Ex. 1, Am. Compl. ¶ 22 ("the Defendant, BORGES <u>at the request of TENCZAR</u> disposed of dump truck loads of 'oil'/solid waste . . . ."); ¶ 62 ("the Defendant, BORGES <u>at the behest of the Defendant abutter, TENCZAR</u> commenced the dumping of unpermitted and unclean fill in the form of 'oil'/solid waste on the abutting property . . . .") (emphases supplied).)

In their memorandum, Plaintiffs contend that Defendant Borges has a contract with the town of Adams, Massachusetts, located near Cheshire, to maintain the roads in Adams. They further contend that the indemnification agreement between Defendant Borges and Defendant Tenczar's father also indemnifies the town of Adams, which, Plaintiffs argue, implies that Defendant Borges and the town of Adams have a sufficiently "'close nexus'" such that Defendant Borges's conduct should be "'fairly treated as that of the State itself.'" <u>Perkins v. Londonderry Basketball Club</u>, 196 F.3d 13, 19 (1st Cir. 1999) (quoting <u>Jackson v. Metropolitan</u>

<u>Edison Co.</u>, 419 U.S. 345, 351 (1974)).

No allegations concerning the connection between Defendant Borges and the town of Adams appear in the complaint, nor does any mention of the inclusion of the town of Adams in the indemnification agreement, which is not attached as an exhibit. However, even assuming the truth of the allegations that appear in Plaintiffs' memorandum, Plaintiffs have not explained how this contractual relationship with a different town demonstrates that Defendant Borges was acting under color of state law when it performed private work on private property.

To establish that a private entity like Defendant Borges has acted under color of state law, Plaintiffs "must show that the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert,' that the challenged conduct fairly can be attributed to the State." <u>Id.</u> at 19 (quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982)). Plaintiffs have failed to provide any facts suggesting as much, and, thus, Count VI against Defendant Borges will be dismissed with prejudice.

3. <u>Count VII: Intentional Infliction of Emotional Distress</u>.

Plaintiffs have not identified the specific conduct on

the part of Defendant Borges that allegedly caused their emotional distress. The most the complaint contains is an allegation that Defendant Borges disposed of waste on Tenczar's property in violation of state and local environmental regulations (Dkt. No. 1, Ex. 1, Am. Compl. ¶¶ 45, 60, 62), that Defendant Borges's dumping caused the stream to overflow resulting in flooding of Plaintiffs' basement (Id. ¶¶ 63, 65, 67), and that Defendant Borges was advised of the flooding but did not cease its conduct (Id. ¶ 68).

However, even "assuming the truth of all the allegations in the amended complaint, the conduct complained of does not as a matter of law amount to extreme and outrageous behavior beyond all possible bounds of decency and which are utterly intolerable in a civilized community." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315 (Mass. 1976) (internal quotation marks omitted)). Moreover,

> "[r]ecovery on such a claim requires more than that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."

Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 511 (1st

Cir. 2002) (quoting Restatement (Second) of Torts § 46, cmt. d). Here, with respect to Defendant Borges, Plaintiffs have not even alleged tortious intent, much less criminal intent or malice. Accordingly, Count VII against Defendant Borges will be dismissed with prejudice for failure to state a claim on which relief can be granted.

For the reasons stated, the court will allow Defendant Borges's motion to dismiss in its entirety, and Counts V, VI, and VII will be dismissed with prejudice (Dkt. No. 12). With regard to the remaining counts against Defendant Borges, namely Counts I, II, III, and IV, the court will dismiss these without prejudice based on a lack of any viable federal claim.

D. <u>Town of Cheshire's Motion to Dismiss (Dkt. No. 15)</u>.

Defendant Town has moved to dismiss the entire complaint. For the reasons that follow, the court will dismiss Counts V, VI, VII, and VIII with prejudice, and Counts I, II, III, and IV without prejudice.

1. <u>Count I: Violation of Environmental Protection Statutes</u>.

Within Count I, Plaintiffs allege violations of various environmental regulations and state statutes. Although it appears that Defendant Town has strong arguments in opposition to many of Plaintiffs' claims, a state court is

-21-

in a better position to analyze their viability. Accordingly, Count I will be dismissed without prejudice.

2.  <u>Tort Claims: II, III, IV, and VII</u>.

Although some of Plaintiffs' allegations are barred by the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, § 10, Plaintiffs' allegations of nuisance, trespass, and negligence are sufficiently convoluted that the court cannot dismiss them outright, with prejudice. Counts II, III, and IV will be dismissed without prejudice as to Defendant Town.

The same is not true with respect to Count VII, which is expressly barred by the MTCA.  <u>See</u> Mass. Gen. Laws ch. 258, § 10(c) (expressly exempting public employers for liability for "any claim arising out of an intentional tort, including . . . intentional mental distress . . . ."). Count VII will thus be dismissed with prejudice as to Defendant Town.

3.  <u>Count V: Violation of Mass. Gen. Laws ch. 12, §§11H-I</u>.

Defendant Town points out that it cannot be sued for a violation of the Massachusetts Civil Rights Act.  <u>See</u> <u>Howcroft v. City of Peabody</u>, 747 N.E.2d 729, 744 (Mass. App. Ct. 2001) ("[W]e conclude that a municipality is not a 'person' covered by the Massachusetts Civil Rights Act.").

Thus, Count V will be dismissed with prejudice as against Defendant Town.

    4.   <u>Count VI: Violation of 42 U.S.C. § 1983</u>.

As noted above, Plaintiffs allege that Defendants have deprived them of the right to "hold, own and enjoy property, [and] the right to seek redress from their government, among other constitutional rights." (Dkt. No. 1, Ex. 1, Am. Compl. ¶ 110.) "[A] municipality can be found liable under § 1983 only where the municipality <u>itself</u> causes the constitutional violation at issue." <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989) (emphasis in original). Section 1983 liability may attach to a municipality "only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" <u>Wilson v. City of Boston</u>, 421 F. 3d 45, 59 (1st Cir. 2005) (quoting <u>Monell v. Dep't. of Social Servs.</u>, 436 U.S. 658, 691 (1978)). Plaintiffs have alleged no facts that even suggest the existence of policy or custom, official or otherwise, that directly resulted in a constitutional deprivation. Thus, Count VI will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

    5.   <u>Count VIII: Claims for Injunctive Relief</u>.

Count VIII is an amalgam of claims, including a factually unsupported allegation that Defendant Town has deprived the Plaintiffs of unspecified "well-established Constitutional rights while acting under the color of the law." (Dkt. No. 1, Ex. 1, Am. Compl. ¶ 117.) The complaint offers no viable allegations of either federal or state constitutional violations. Accordingly, that portion of Count VIII claiming constitutional violations will be dismissed with prejudice.

Also within Count VIII are various requests for injunctive relief, including requests for temporary restraining orders, preliminary injunctions, and permanent injunctions. (Id. ¶ 120 (a)-(h).) At the hearing, the court denied Plaintiffs' separate motion for a temporary restraining order (Dkt. No. 27) on the grounds that Plaintiffs had failed to show a likelihood of success on the merits. Plaintiffs' additional requests for injunctive relief in their complaint will be denied without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Tenczar's motion to dismiss (Dkt. No. 10) is hereby ALLOWED. All seven counts against him, Counts I-VI and Count VIII, are hereby

-24-

dismissed with prejudice.[6]

Defendant Borges's motion to dismiss (Dkt. No. 12) is hereby ALLOWED.  As to Defendant Borges, Counts I, II, III, and IV are dismissed without prejudice, and Counts V, VI, and VII are dismissed with prejudice.

Defendant Town's motion to dismiss (Dkt. No. 15) is hereby ALLOWED.  As to Defendant Town, Counts I, II, III, and IV are dismissed without prejudice, and Counts V, VI, VII, and VIII are dismissed with prejudice, with the exception of the requests within Count VIII seeking injunctive relief, which are dismissed without prejudice.

The rulings allowing dismissal without prejudice are based on the Supreme Court's decision in <u>United Mineworkers v. Gibbs</u>, which gives to federal courts the power to dismiss purely state law claims without prejudice to their re-filing in state court once the core federal claims are found to be

---

[6] As noted, Plaintiffs may file an amended complaint in state court, setting forth allegations supporting requests for purely equitable relief aimed at new and ongoing actionable conduct by Defendant Tenczar, if any, that is unprotected by Defendant Tenczar's bankruptcy discharge.  This amended complaint may also include requests for equitable relief that would not require the expenditure of funds by Defendant Tenczar.

without substance.  383 U.S. 715, 726-27 (1966) (holding

that where a complaint alleges both federal and state

claims, "if it appears that the state issues substantially

predominate, whether in terms of proof, of the scope of the

issues raised, or of the comprehensiveness of the remedy

sought, the state claims may be dismissed without prejudice

and left for resolution to state tribunals").  Of course,

any future filings in state court should follow careful

reconsideration of the likely practical benefits of ongoing

litigation and, if possible, pursuit of alternative,

effective ways to resolve the underlying difficulty without

additional court action.

Plaintiffs' motion for a temporary restraining order

(Dkt. No. 27) is hereby DENIED.  This case may now be

closed.

It is So Ordered.

                              /s/ Michael A. Ponsor
                              MICHAEL A. PONSOR
                              U. S. District Judge